IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| Priscilla Sairras-Fertil, | ) | CIVIL ACTION NO._____ |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| Miami-Dade County, | ) | |
| | ) | |
| Defendant. | ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act, as amended, Families First Coronavirus Response Act, and the Emergency Paid Sick Leave Act to correct unlawful employment practices and to provide relief to Plaintiff Priscilla Sairras-Fertil who was adversely affected by such practices.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Section 703 of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-2, 42 U.S.C. §2000e-3, Families First Coronavirus Response Act ("FFCRA") and Emergency Paid Sick Leave Act ("EPSLA"), which are enforced through sections 15(a)(3), 16 and 17 of the FLSA, 29 U.S.C. §§ 216-217. *See* 29 C.F.R. § 826.150.

2. The unlawful employment practices alleged in this Complaint were committed within the jurisdiction of the United States District Court for the Southern District of Florida. Therefore, in accordance with 28 U.S.C. §1391, venue is appropriate in this Court.

## PARTIES

3. During all times material, Plaintiff, Priscilla Sairras-Fertil ("Plaintiff" or "Sairras-Fertil"), was an employee of Defendant Miami-Dade County ("Defendant"), resided in Miami-Dade County, Florida and the cause of action accrued in the jurisdiction of the United States District Court for the Southern District of Florida.

4. During all times material, Defendant provides services in Miami-Dade County, Florida, and employed Sairras-Fertil in Miami-Dade County, Florida.

5. At all relevant times, Defendant has continuously been doing business in Miami-Dade County and has continuously had at least 15 employees.

6. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). At all relevant times, Defendant has continuously been an employer within the meaning of 42 U.S.C. §2000e(b), and an employer pursuant to 29 USC § 203(d).

## CONDITIONS PRECEDENT

7. Sairras-Fertil has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Sairras-Fertil timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant.

8. The EEOC issued to Plaintiff a Notice of Right to Sue. Sairras-Fertil timely commenced this action.

## STATEMENT OF FACTS

9. Sairras-Fertil is an African American female from Suriname.

10. On or about Wednesday, August 13, 2019, Sairras-Fertil received an email from Defendant indicating that she had successfully passed all preliminary requirements and that she was accepted as a new hire in Defendant's Community Action and Human Services Department as a VOCA 2 specialist.

11. Subsequently, Bureau Chief Ivon Mesa informed Sairras-Fertil that September 23, 2019 would be Sairras-Fertil's official hire date and that she was expected to report to the Coordinated Victims Assistance Center ("CVAC") to start her employment.

12. On or about November 13, 2019, Sairras-Fertil sent an email to her immediate supervisor, Ana Lorenzo, requesting to speak to her regarding work that Sairras-Fertil had completed with her trainers and to inform Ms. Lorenzo that Sairras-Fertil did not have the required access to log her cases under her name.

13. During Sairras-Fertil's meeting with Ms. Lorenzo, Ms. Lorenzo reassured Sairras-Fertil that she should continue her good work.  Nonetheless, during December 2019, several of Sairras-Fertil's clients called Sairras-Fertil and told her that another VOCA 2 specialist, Marta Trujillo, called them and told them Sairras-Fertil was not doing her job correctly.

14. On or about January 7, 2020, Ms. Trujillo disrespected Sairras-Fertil and falsely accused Sairras-Fertil of failing to complete a client's protection order and intake at 9:00 am that day.

15. During her outburst, Ms. Trujillo was holding the Temporary Order Protection appointment booklet.  Sairras-Fertil asked Ms. Trujillo to allow Sairras-Fertil to review the booklet because no appointment was scheduled for 9:00 am when Sairras-Fertil previously looked at the booklet that morning.

16. Ms. Trujillo's right hand was placed directly over the alleged 9:00 am appointment and she blocked Sairras-Fertil's ability to see the alleged client's name.

17. Once Ms. Trujillo removed her hand from the booklet, Sairras-Fertil noticed that the 9:00 am available slot that was previously blank suddenly had a scheduled intake and temporary protection order.

18. The handwriting in the booklet for the dubious 9:00 am appointment is clearly not from Sairras-Fertil and was most likely added by Ms. Trujillo.

19. The dubious 9:00 am appointment was secretly added to the booklet as part of a scheme to discipline Sairras-Fertil and ultimately end her employment with Defendant due to her race and national origin.

20. Approximately three days later, Sairras-Fertil came into her CVAC office in the morning and a plant that was on her filing cabinet was knocked to the ground and shattered by someone.

21. Then on or about January 31, 2020, Sairras-Fertil went to her CVAC work desk and saw that her bible was open and someone had ripped a page within.

22. On or about February 12, 2020, Sairras-Fertil had a meeting with Defendant's Director of Community Action & Human Services Department, Annika Holder, and Defendant's Director of Human Resources at Community Action and Human Service Department, Karen Alexander, regarding Ms. Trujillo's outburst and disrespectful behavior towards Sairras-Fertil, Sairras-Fertil's plant being knocked over, Sairras-Fertil's Bible page being torn, and that all the aforementioned may be the result of racial discrimination.

23. On or about the morning of Tuesday, February 25, 2020, a front desk employee, Sasha Santana, told Sairras-Fertil a potential client was waiting in the Trauma Resolution Center ("TRC").

24. Sasha said the potential client would come out of the TRC in ten to fifteen minutes. Sairras-Fertil waited twenty minutes, went to her work desk and then went back to the front desk and was told by Ms. Santana that the potential client was still in the TRC.

25. Eventually Ms. Lorenzo informed Sairras-Fertil that TRC counseling only happens on Wednesdays, not Tuesdays. This deception was once again part of a scheme to discipline Sairras-Fertil and ultimately end Sairras-Fertil's employment with Defendant due to her race and national origin.

26. Approximately two days later, supervisor Violet Felipe made false claims that Sairras-Fertil told the alleged potential client to wait thirty to forty-five minutes before Sairras-Fertil would assist her.

27. Then on or about March 27, 2020, Sairras-Fertil was wrongfully put on a performance improvement plan due to her race and national origin.

28. During April, 2020, Sairras-Fertil was quarantined as a precaution regarding Covid-19. During that same month, Sairras-Fertil made a complaint with the Department of Labor regarding Respondent denying Sairras-Fertil her rights under the Family First Coronavirus Response Act ("FFCRA") and the Emergency Paid Sick Leave Act ("EPSLA").

29. The Department of Labor conducted an investigation and concluded that Defendant did in fact violate Sairras-Fertil's FFCRA and EPSLA rights by requiring her to use her personal sick leave hours while she quarantined due to experiencing Covid-19 symptoms.

30. Subsequently, on June 8, 2020, a security guard, Mr. Alfredo Aleman, checked Sairras-Fertil's temperature at the entrance at the CVAC with an infrared thermometer.

31. However, about fifteen minutes later, he entered Sairras-Fertil's office and stated, "Great you are here, now I can shoot you!" Mr. Aleman approached Sairras-Fertil, reached into his duty

belt, retrieved his infrared thermometer, placed it against Sairras-Fertil's temple, mimicked a shooting sound of "poof" and proceeded to check Sairras-Fertil's temperature again.

32. Mr. Aleman also harassed Sairras-Fertil in the parking lot on Tuesday, June 9, 2020; co-worker, Anajah McNish, witnessed said harassment.

33. On June 9, 2020, Sairras-Fertil reported the incidents to Ms. Lorenzo and specifically requested that Mr. Aleman not continue to take Sairras-Fertil's temperature with the infrared thermometer because she was uncomfortable around him following his hostile actions towards her.

34. Ms. Lorenzo said she would speak to Mr. Aleman. Sairras-Fertil then saw Mr. Aleman go to Ms. Lorenzo's office. Approximately fifteen minutes later, Mr. Aleman entered Sairras-Fertil's office to take Sairras-Fertil's temperature again with the infrared thermometer.

35. When Sairras-Fertil questioned Ms. Lorenzo about why Mr. Aleman was allowed to come to Sairras-Fertil's office to test her temperature again, Ms. Lorenzo told Sairras-Fertil that Mr. Aleman told her he was "joking."

36. Ms. Lorenzo is aware that Sairras-Fertil is a victim of domestic violence involving a firearm; yet she failed to protect Sairras-Fertil from Mr. Aleman.

37. That week, Sairras-Fertil notified Ms. Holder and Ms. Alexander of what transpired.

38. Approximately a day later, Sairras-Fertil was in the CVAC parking lot and Mr. Aleman saw Sairras-Fertil again and stood outside the CVAC in a hostile stance as he was looking directly at Sairras-Fertil's vehicle.

39. That day, Sairras-Fertil called the City of Miami Police Department regarding Mr. Aleman's hostile behavior towards Sairras-Fertil and Mr. Aleman was removed from the premises by said police officers.

40. On or about June 23, 2020, Sairras-Fertil was further targeted when Ms. Lorenzo gave a nine-month performance evaluation where Ms. Lorenzo falsely wrote that Sairras-Fertil failed in every category of the evaluation.

41. At that point, Ms. Lorenzo recommended disciplinary action against Sairras-Fertil including termination as a scheme to end Sairras-Fertil's employment with Defendant due to her race and national origin.

42. On Friday, June 26, 2020, Sairras-Fertil contacted Ms. Holder and requested an appeal of the evaluation citing inconsistencies and inaccurate reporting of performance measures from Ms. Lorenzo.

43. On or about July 9, 2020, Sairras-Fertil's performance evaluation was cancelled by Human Resources employee, Gereia James.

44. On or about July 10, 2020, Sairras-Fertil participated in a Zoom online meeting with both Ms. Holder and Ms. Alexander regarding Sairras-Fertil's concerns with her false performance evaluation and the incident with Mr. Aleman.

45. Sairras-Fertil expressed her concerns with experiencing acts of retaliation since filing a formal complaint with both directors on or about February 12, 2020 and that she was still enduring hostility. Ms. Holder then told Sairras-Fertil the performance evaluation by Ms. Lorenzo was not done correctly.

46. On August 21, 2020, Sairras-Fertil's employment was terminated because of her race and national origin, in retaliation for opposing race discrimination, in retaliation for taking leave under the FFCRA and EPSLA, and for enforcing her rights under the FFCRA and EPSLA.

47. During all times material, Defendant's employees, including, but limited to, Ivon Mesa, Ana Lorenzo, Sasha Santana, Marta Trujillo, Annika Holder, and Karen Alexander, acted within the scope of their employment with Defendant.

## COUNT I
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

48. The allegations set forth in Paragraphs 1 through 44 are re-alleged as if fully set forth herein.

49. Plaintiff was the victim of discrimination on the basis of being Surinamese in violation of Title VII of the Civil Rights Act, as amended.

50. Defendant has discriminated against Sairras-Fertil on the basis of her being Surinamese which resulted in Sairras-Fertil being terminated from the position of VOCA 2 specialist.

51. Sairras-Fertil was qualified for her position as VOCA 2 specialist.

52. The wrongful termination was an adverse employment action.

53. The reasons proffered by Defendant for Sairras-Fertil's termination are pretextual and are being used as a cover up for Defendant's unlawful national origin discrimination against Sairras-Fertil.

54. Similarly situated employees who were not in Sairras-Fertil's protected class of Surinamese, were treated more favorably in that they were not terminated.

55. As a result of the Defendant's unlawful national origin discrimination, Sairras-Fertil suffered economic losses, including the loss of income and fringe benefits she had received while employed by the Defendant.

56. As a result of Defendant's unlawful national origin discrimination, Plaintiff requests and is entitled to all such legal and equitable remedies available under the law.

57. During all times material, Defendant's employees, including, but limited to, Ivon Mesa, Ana Lorenzo, Sasha Santana, Marta Trujillo, Annika Holder, and Karen Alexander, acted within the scope of their employment with Defendant.

58. Sairras-Fertil has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Sairras-Fertil timely filed a Charge of Discrimination with the EEOC.

59. The EEOC issued a Right to Sue letter for Sairras-Fertil's claims. Sairras-Fertil timely commenced this action.

WHEREFORE Plaintiff demands judgment against Defendant and respectfully requests declaratory relief and all damages, including back pay, front pay, wages, salary, and fringe benefits, compensatory damages, including those for future loss, plus pre-judgment interest, post-judgment interest, taxable costs and attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

60. The allegations set forth in Paragraphs 1 through 44 are re-alleged as if fully set forth herein.

61. Plaintiff was the victim of discrimination on the basis of being African American in violation of Title VII of the Civil Rights Act, as amended.

62. Defendant has discriminated against Sairras-Fertil on the basis of her being African American which resulted in Sairras-Fertil being terminated from the position of VOCA 2 specialist.

63. Sairras-Fertil was qualified for her position as VOCA 2 specialist.

64. The wrongful termination was an adverse employment action.

65. The reasons proffered by Defendant for Sairras-Fertil's termination are pretextual and are being used as a cover up for Defendant's unlawful race discrimination against Sairras-Fertil.

66. Similarly situated employees who were not in Sairras-Fertil's protected class of African American, were treated more favorably in that they were not terminated.

67. As a result of the Defendant's unlawful race discrimination, Sairras-Fertil suffered economic losses, including the loss of income and fringe benefits she had received while employed by the Defendant.

68. As a result of Defendant's unlawful race discrimination, Plaintiff requests and is entitled to all such legal and equitable remedies available under the law.

69. During all times material, Defendant's employees, including, but limited to, Ivon Mesa, Ana Lorenzo, Sasha Santana, Marta Trujillo, Annika Holder, and Karen Alexander, acted within the scope of their employment with Defendant.

70. Sairras-Fertil has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Sairras-Fertil timely filed a Charge of Discrimination with the EEOC.

71. The EEOC issued a Right to Sue letter for Sairras-Fertil's claims. Sairras-Fertil timely commenced this action.

WHEREFORE Plaintiff demands judgment against Defendant and respectfully requests declaratory relief and all damages, including back pay, front pay, wages, salary, and fringe benefits, compensatory damages, including those for future loss, plus pre-judgment interest, post-judgment interest, taxable costs and attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT III
## RETALIATION DUE TO OPPOSING RACE DISCRIMINATION IN VIOLATION OF TITLE VII

72. The allegations set forth in Paragraphs 1 through 44 are re-alleged as if fully set forth herein.

73. Sairras-Fertil was the victim of retaliation due to her opposing race discrimination in violation of Title VII of the Civil Rights Act.

74. Defendant has discriminated against Sairras-Fertil on the basis of her being African American.

75. Sairras-Fertil was qualified for her position as VOCA 2 specialist.

76. Sairras-Fertil's employment was terminated after making complaints of race discrimination.

77. As a consequence of opposing discrimination based on her race, Sairras-Fertil was terminated from her employment with Defendant.

78. Defendant has no legitimate non-retaliatory, non-discriminatory reason for terminating Plaintiff's employment.

79. As a result of the Defendant's unlawful retaliatory termination, Sairras-Fertil suffered economic losses, including the loss of income and fringe benefits she had received while employed by the Defendant.

80. As a result of Defendant's unlawful retaliatory termination, Plaintiff requests and is entitled to all such legal and equitable remedies available under the law.

81. During all times material, Defendant's employees, including, but limited to, Ivon Mesa, Ana Lorenzo, Sasha Santana, Marta Trujillo, Annika Holder, and Karen Alexander, acted within the scope of their employment with Defendant.

82. Sairras-Fertil has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Sairras-Fertil timely filed a Charge of Discrimination with the EEOC.

83. The EEOC issued a Right to Sue letter for Sairras-Fertil's claims. Sairras-Fertil timely commenced this action.

WHEREFORE Plaintiff demands judgment against Defendant and respectfully requests all damages, including back pay, front pay, wages, salary, and fringe benefits, compensatory damages, including those for future loss, plus pre-judgment interest, post-judgment interest, taxable costs and attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT IV
## RETALIATION IN VIOLATION OF THE EPSLA SECTION OF THE FFCRA

84. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 44 above as if fully set forth herein.

85. The Emergency Paid Sick Leave Act ("EPSLA") prohibits employers from taking adverse actions against employees who take leave under the EPSLA.

86. In direct violation of the EPSLA's mandates, Defendant retaliated against Plaintiff by terminating Plaintiff's employment because she took leave as a result of experiencing COVID-19 symptoms.

87. Defendant has no legitimate non-retaliatory, non-discriminatory reason for terminating Plaintiff's employment.

88. As a result of the Defendant's unlawful retaliatory termination, Sairras-Fertil suffered economic losses, including the loss of income and fringe benefits she had received while employed by the Defendant.

89. As a result of Defendant's unlawful retaliatory termination, Plaintiff requests and is entitled to all such legal and equitable remedies available under the law.

90. During all times material, Defendant's employees, including, but limited to, Ivon Mesa, Ana Lorenzo, Sasha Santana, Marta Trujillo, Annika Holder, and Karen Alexander, acted within the scope of their employment with Defendant.

WHEREFORE Plaintiff demands judgment against Defendant and respectfully requests all damages, including back pay, front pay, wages, salary, and fringe benefits, compensatory damages, including those for future loss, plus pre-judgment interest, post-judgment interest, taxable costs and attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT V
## RETALIATION IN VIOLATION OF THE EPSLA SECTION OF THE FFCRA

91. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 44 above as if fully set forth herein.

92. The Emergency Paid Sick Leave Act ("EPSLA") prohibits employers from taking adverse actions against employees who take actions to enforce the requirements of the EPSLA.

93. Despite the EPSLA's requirements, Defendant unlawfully terminated Plaintiff after she enforced the requirements of the EPSLA.

94. In direct violation of the EPSLA's mandates, Defendant retaliated against Plaintiff by terminating Plaintiff's employment because she enforced the requirements of the EPSLA by making a complaint to the United States Department of Labor and eventually getting her personal sick leave hours reinstated.

95. Defendant has no legitimate non-retaliatory, non-discriminatory reason for terminating Plaintiff's employment.

96. As a result of the Defendant's unlawful retaliatory termination, Sairras-Fertil suffered economic losses, including the loss of income and fringe benefits she had received while employed by the Defendant.

97. As a result of Defendant's unlawful retaliatory termination, Plaintiff requests and is entitled to all such legal and equitable remedies available under the law.

98. During all times material, Defendant's employees, including, but limited to, Ivon Mesa, Ana Lorenzo, Sasha Santana, Marta Trujillo, Annika Holder, and Karen Alexander, acted within the scope of their employment with Defendant.

WHEREFORE Plaintiff demands judgment against Defendant and respectfully requests all damages, including back pay, front pay, wages, salary, and fringe benefits, compensatory damages, including those for future loss, plus pre-judgment interest, post-judgment interest, taxable costs and attorneys' fees, and any other relief deemed just and proper by the Court.

## JURY TRIAL DEMAND

Plaintiff Priscilla Sairras-Fertil demands a trial by jury on all issues so triable.

Date: Wednesday, December 30, 2020

Respectfully submitted,

*/s Nnamdi Jackson*
Nnamdi S. Jackson
Fla. Bar No. 99804
The Law Office of Nnamdi S. Jackson, P.A.
2645 Executive Park Drive, suite 340
Weston, FL 33331
(954) 670-1267
njackson@nsjlawoffice.com